UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ELLIS JOHNSON,<br>        Plaintiff,<br>    v.<br>UNITED STATES,<br>        Defendant. | Case No. 22-cv-00747-DMR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 7 |

Defendant United States of America moves to dismiss James Ellis Johnson's complaint alleging civil rights and tort claims under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). [Docket No. 7.] Johnson, who is self-represented, filed an opposition brief. [Docket Nos. 12, 14 ("Opp'n").][1] Defendant replied. [Docket No. 13 ("Reply").] The court held a hearing on August 25, 2022. For the following reasons, the motion is granted. Johnson is granted leave to file a First Amended Complaint ("FAC") within 30 days—i.e., by **October 12, 2022**.

I.  **BACKGROUND**

Johnson makes the following allegations in the complaint and the accompanying exhibits,

---

[1] After Johnson failed to file a timely opposition brief, the court ordered him to show cause why the case should not be dismissed for failure to prosecute. [Docket No. 9.] Johnson then filed a request for a one-month extension due to medical concerns, which the court granted. [Docket Nos. 10, 11.] Johnson thereafter timely filed his opposition brief. [Docket No. 12.] After Defendant filed its reply brief, Johnson re-filed his opposition brief, styled as "Corrected Objections" and attaching an exhibit that appears to show minor typographical corrections he made to his earlier opposition. [Docket No. 14.] Defendant did not object to Johnson's second filing. Given Johnson's self-represented status and the non-substantive nature of his later corrections, the court relies on Johnson's second brief, filed at Docket No. 14, for the purposes of this motion.

all of which are taken as true for the purposes of the motion.[2] [Docket No. 1 ("Compl.").] Liberally construed, Johnson alleges that on January 14, 2020, he was arrested by the Department of Veterans Affairs ("VA") police in Palo Alto "for no reason."[3] Compl. at 3. He claims, "I believe the hold situation was a set up. There was a short talk between my self and another veteran, then he left!" *Id.* Johnson explains that he was trying to make an appointment but then three armed members of the VA police showed up. *Id.* at 4. One stopped thirty feet away from him and demanded Johnson to approach him and explain "what happen[ed]." *Id.* Johnson replied that he wanted to know why there were three armed officers present. *Id.* Johnson requested an attorney and for that reason, he asserts, he was arrested. *Id.*

Johnson claims that he was "manhandled," "forced down walk ways, and hall ways" and not allowed to "walk on my own." Compl. at 4. Johnson then was forced into a room and handcuffed behind his back. *Id.* He was not allowed to leave and was denied his *Miranda* rights. *Id.* Johnson did not answer any questions until "the pain in my shoulder became unbearable" related to an injury that the VA "refused to treat me for." *Id.* Johnson contends that the officer kept telling him that "I [know] the law, and you don[']t." Compl. at 5. The officer then "tortured" him. *Id.* The officers later took him to court, but "when it was pointed out I prevented a situation, not caused one, they dropped the charge." *Id.* Johnson does not explain what offense he was initially charged with.

Johnson asserts that he learned the VA had a "notice" in its system "telling staff to call police if I cause a problem" but that no such notice was ever "presented" to him. *Id.* Instead, the VA staff called the police just for "stating a point of view," which abridged his "right to freedom of speech." *Id.* The notice to which Johnson refers appears to be a "behavioral flag" imposed by

---

[2] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Attached to Johnson's complaint are additional exhibits supporting his claims for relief. The court liberally construes all of these materials as part of his complaint. Johnson is directed to provide a single, complete version of his statement of facts when he files his FAC.

[3] The complaint says "14 San. 2020" but other exhibits clarify that the incident in question took place on January 14, 2020.

2

the VA due to Johnson's previous "disruptive behavior." *Id.*; *see* Compl. Ex. 1.

Johnson alleges a claim for violation of "civil rights, freedom of speech" related to the behavioral flag. Compl. at 6. He also asserts a second claim labeled "tort law, negligence liability." The second claim lists false arrest, false imprisonment, assault, "tortured," false prosecution, and "prima facie case i,ii,iii,iv." *Id*. at 7. Johnson seeks $9,900 in damages plus injunctive relief consisting of a removal of the behavioral flag from the VA computer system, plus costs.

Johnson attaches exhibits to his complaint. The first is a printout of the behavioral flag. The behavioral flag requires "Staff to contact local law enforcement or VA Police should patient be unable to be redirected from engaging in disruptive behavior or pose a threat to safety." Compl. Ex. 1. VA staff members also must complete certain reports to "inform other providers and Disruptive Behavior Committee of any further events." *Id.* According to the flag, "[t]he Veteran has a history of verbally disruptive behavior. (4/30/8, 3/23/17, 1/2/17, SFVA 5/20/17)."[4] *Id.*

Exhibit 2 is the VA's response to a Freedom of Information Act ("FOIA") request that Johnson submitted on January 15, 2020 for a copy of the "Disruptive behavior report 4/20/2018, 2/22/2017, 1/02/2017, and Ref # 640-181942." The VA identified only one responsive document, related to "Ref # 640-191942 dated 4/30/2018," but redacted certain portions of it pursuant to a FOIA exemption that permits withholding documents that would "constitute a clearly unwarranted invasion of a living person's personal privacy." Compl. Ex. 2. The redacted report from the "Disruptive Behavior Reporting System" includes Johnson's health records from 2018. *Id.*[5] The VA did not locate any responsive records for the requested reports dated 2/22/2017 and 1/02/2017. *Id.*

Exhibit 3 encompasses a number of documents that are connected to the January 14, 2020

---

[4] Taken in context with other exhibits, the "4/30/8" likely refers to 4/30/18.

[5] Exhibit 2 also contains sensitive personal identifiable information. In light of the implicated privacy interest, the court orders the Clerk to seal Docket No. 1 and file a version of the complaint with the sensitive personal information redacted. *See* Civ. L.R. 79-5.

incident. These documents include (1) an administrative tort claim that Johnson filed with the VA on January 16, 2020; (2) another printout of the behavioral flag; (3) progress notes from a VA employee regarding a call she had with Johnson on November 19, 2019, in which he threatened to "take [her] to court to explain why he has this flag"; and (4) documents about a petty offense hearing held on September 2, 2020 regarding a charge of disorderly conduct against Johnson. The last category of documents include a Notice to Appear from the U.S. District Court for the Northern District of California and letters by Johnson in advance of that hearing. The complaint and attachments do not describe the nature of the hearing or the outcome. Finally, Exhibit 3 includes an email to Johnson with contact information where he could send a "request for reconsideration" without any explanation of what he sought reconsideration.[6]

## II.   LEGAL STANDARDS

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge asserts that subject-matter jurisdiction does not exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242. In contrast with a facial challenge, a factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Even the

---

[6] For the first time in his opposition, Johnson attaches as Exhibit 4 a number of police reports from the San Francisco Police Department. Johnson does not describe the relevance of these documents, and the court cannot "consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

4

presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). "This duty applies equally to pro se motions." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020). However, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

1    Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## III.  DISCUSSION

Defendant moves to dismiss the complaint for (1) failing to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires that a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555; (2) lack of subject-matter jurisdiction as to the civil rights claim only, and (3) failing to plead legally cognizable and/or plausible facts. While Plaintiff's opposition is confusing and disjointed, the court construes the arguments in his brief liberally in light of his self-represented status. *See Qazi*, 975 F.3d at 993.

### A.  Civil Rights Claim

Plaintiff's first claim for violation of his civil rights and freedom of speech challenges the behavioral flag to the extent that it may have led to the incident on January 14, 2020 at the VA. Plaintiff claims that the behavioral flag was imposed due to his allegedly verbally disruptive behavior on four discrete dates but that he was never notified of the flag's existence. Compl. at 6. After receiving information responsive to a FOIA request, he claims that one of the dates that was listed on the flag was incorrectly documented, and that the dates were "fabrications." *Id.* He claims that no matter what he said or if he had a "disagreement," that the police were called on him. *Id.* He also claims that 38 C.F.R. § 17.107[7] requires a certified letter notifying him about the

---

[7] Johnson's complaint refers to "V.A. 38 U.S.C. 17.106," but that is not an actual statute. His opposition clarifies that he refers to 38 C.F.R. § 17.107. Opp'n at 3. The court construes the

6

behavioral flag to be mailed to him, and that he has thirty days to appeal the determination but that "[n]one of this was done." *Id.*

38 C.F.R. § 17.107(b) "authorizes a chief of staff of a VA medical center to restrict the 'time, place, and/or manner of the provision of a patient's medical care' if the chief of staff determines that 'the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, VA staff.'" *Johnson v. United States*, No. C-13-2405 EMC, 2013 WL 6502818, at *9 (N.D. Cal. Dec. 11, 2013) (quoting 38 C.F.R. § 17.107(b)).[8] "The restrictions may include 'requiring police escort' or 'authorizing VA providers to terminate an encounter immediately if certain behaviors occur.'" *Id.*; *see* 38 C.F.R. § 17.107(d). The order must be "narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care." 38 C.F.R. § 17.107(b)(2). The patient must receive "a copy of the order and written notice of the procedure for appealing the order to the Network Director of jurisdiction as soon as possible after issuance." *Id.* § 17.107(b)(4). The patient may then appeal the order within 30 days of its issuance. *Id.* § 17.107(e).

In Johnson's opposition, he clarifies that he "never said the issuance of this behavioral flag by itself violated his First Amendment right to free speech." Opp'n at 4. Rather, "[t]here was no disruptive behavior that gave cause for this flag to be placed in a national computer, and nor was any notice given to Plaintiff, violating Plaintiff['] right to appeal." *Id.* Furthermore, the "so-called disruptive behavior which caused the flag to be written was fabricated . . . and made up." *Id.* at 3. Plaintiff then goes on to explain that the behavioral flag was imposed without justification, and

---

complaint's citation as a typographic error.

[8] In an earlier case filed by Plaintiff against Defendant, Johnson challenged a different "Order of Behavioral Restriction" and an incident in 2012 at the San Francisco VA medical center with the VA police arising from that order. That case was originally assigned to the Honorable Edward C. Chen but later was reassigned to the Honorable James Donato. The case, which involved "almost three years of heavy litigation," ultimately went to a two-day bench trial, in which Judge Donato found in favor of Defendant on all claims except for battery, for which Plaintiff was awarded $2,500. *Johnson v. United States*, No. 13-cv-02405-JD, 2016 WL 4488180, at *1, 12 (N.D. Cal. Aug. 26, 2016). The verdict was affirmed on appeal. *Johnson v. United States*, 734 F. App'x 436 (9th Cir. 2018).

7

that Defendant improperly withheld information about the underlying incidents of disruptive behavior in its response to his FOIA request. *Id.* at 4, 6-7. Plaintiff contends that on the date of the incident, the VA called the police because of the behavioral flag on his record and that he was arrested for "disorderly conduct," despite the fact that "the person who called the police did not report any disorderly conduct." *Id.* at 5. The VA police's actions because of the impermissible behavior flag are thus "the cause of why all of this is happening" and "[t]he reason for the suit." *Id.* at 7.

At the hearing, Johnson elaborated further on the nature of his civil rights claim. He explained that he is challenging both the existence of the behavioral flag itself and his arrest by the VA police officers on January 14, 2020 after they were alerted to his presence at the Palo Alto VA because of the behavioral flag. With respect to the behavioral flag, Johnson contends that the flag did not actually exist in the VA's computer system or that it was issued without justification.[9]

To the extent that Johnson alleges that the behavioral flag constitutes a violation of his due process rights, another court in this district has already held that such a claim is not cognizable. *See Johnson*, 2013 WL 6502818, at *10-11 (holding that a VA Order of Behavioral Restriction "does not implicate a property or liberty interest that is protected by the Fifth Amendment" and dismissing Johnson's due process challenge to that order).

To the extent Johnson challenges the existence of the behavioral flag, such a claim is precluded because Johnson failed to exhaust his administrative remedies to appeal the behavioral flag pursuant to 38 C.F.R. § 17.107(e). *See Johnson*, 2013 WL 6502818, at *10 (dismissing Johnson's challenge to this Order of Behavioral Restriction on exhaustion grounds because "[i]f, as Plaintiff asserts, the reasons for the OBR and behavioral flag were 'all fabricated,' an appeal to the Network Director would have contributed to a proper record and decision. Plaintiff, and those

---

[9] Johnson clarified that he was not challenging the behavioral flag as a violation of his freedom of speech. He explained that he did not say or act in any way that would have justified the VA's placement of the behavioral flag in the first place, and that he should not be punished for making any statements or speaking at all. Johnson conceded that this argument was not really a legal claim for relief under the First Amendment but rather amounts to background assertions that inform his civil rights claim.

8

similarly situated, should not be encouraged to bypass the administrative scheme established by the VA").

Johnson's civil rights challenge to the VA officers' arrest is barred under the doctrine of sovereign immunity.[10] "Suits against the [United States] government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity." *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014); *see Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). "The waiver of sovereign immunity is a prerequisite to federal-court jurisdiction," *Tobar*, 639 F.3d at 1195, because the "terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit," *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Waivers to sovereign immunity must be "strictly construed," *Tobar*, 639 F.3d at 1195, and the party asserting claims against the government bears the burden of demonstrating a waiver, *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009). Sovereign immunity applies to both "equitable and legal claims against the United States." *Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of State of Montana*, 792 F.2d 782 (9th Cir. 1986). "[F]ederal district courts have no jurisdiction over the United States where claims allege constitutional torts." *Pereira v. U.S. Postal Serv.*, 964 F.2d 873, 876 (9th Cir. 1992). That includes "actions seeking damages for constitutional violations." *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988); *see, e.g.*, *Johnson*, 734 F. App'x at 400 ("Johnson's allegations of excessive force and failure to intervene cannot overcome the sovereign immunity bar to state a Fourth Amendment claim against the United States.").

Johnson does not identify any applicable waiver of sovereign immunity for his constitutional civil rights claim against Defendant for damages and equitable relief. Accordingly, that claim must be dismissed because the court does not have jurisdiction to hear the claim.[11]

---

[10] Johnson references "qualified immunity" in his opposition, but that is a different legal doctrine. *See* Opp'n at 1.

[11] Defendant contends that "Plaintiff May Not Sue The United States for Misrepresentation" and that "[t]o the extent that Plaintiff is attempting to state a claim for monetary damages based on the[] alleged 'fabrications'" underlying his behavioral flag, that claim is also barred by sovereign

9

### B. Tort Claims

Next, Johnson asserts six tort violations falling within his second claim for "Tort law, Negligence Liability." Compl. at 7. The parties agree that Congress waived sovereign immunity from tort liability through the Federal Tort Claims Act ("FTCA"). Mot. at 10; Opp'n at 6; *see Tobar*, 639 F.3d at 1196 ("[T]he FTCA waives sovereign immunity in tort actions brought against the United States, subject to certain exceptions").[12] California law supplies the elements of Johnson's tort claims. *See Xue Lu v. Powell*, 621 F.3d 944, 945-46 (9th Cir. 2010).

Johnson lists tort violations for false arrest, false imprisonment, assault, "tortured," false prosecution, and "Prima Face Case i,ii,iii,iv." Compl. at 7. He does not, however, plead the elements of any of his claims nor does he allege facts supporting each element. Accordingly, Johnson's second claim falls short of Rule 8's requirement to give Defendant fair notice of his claims. "To meet this requirement, the Supreme Court has held that an 'entitlement to relief' requires 'more than labels and conclusions. Factual allegations must be enough to raise a right to relief above a speculative level.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.[13] On that basis alone, Johnson's second claim can be dismissed. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir.

---

immunity." Mot. at 9; *see* Compl. at 6. As Johnson clarifies that "[n]o one is trying to sue the United States for misrepresentation," the court does not reach this argument. Opp'n at 6.

[12] These exceptions include "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," although claims for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" against federal law enforcement agents are covered by the FTCA. 28 U.S.C.A. § 2680(h). Neither party argues that the torts listed in Johnson's second claim fall within the FTCA's exceptions.

[13] Johnson argues that his "use of the complaint form provided by the Clerk of Court does comply with Rule 8." Opp'n at 3-4. That is incorrect. Simply filling out the Northern District of California's template forms form does not satisfy Johnson's obligation to "provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555. Johnson points to the second clause in Rule 8(a)(1) that the pleading must contain a "short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Opp'n at 3. However, that clause refers to the pleading's assertion of jurisdiction and does not appear in the subsequent sub-section requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

10

1996) (affirming dismissal where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."). For the sake of completeness, the court now addresses each of Johnson's tort claims in order to provide guidance should Johnson choose to amend these claims.

### 1. False Arrest and False Imprisonment

"Under California law, false arrest and false imprisonment describe the same 'unlawful violation of the personal liberty of another.'" *Johnson*, 2016 WL 4488180, at *8 (quoting *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007)); *see* Cal. Penal Code § 236. False arrest and false imprisonment are not separate torts and are "distinguishable only in terminology." *Tekle*, 511 F.3d at 854. "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Id.* (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000). "In the context of an FTCA claim, a federal officer . . . has lawful privilege to 'arrest someone for a misdemeanor when the offense actually has been committed or attempted in his presence.'" *Johnson*, 2016 WL 4488180, at *8 (quoting *Tekle*, 511 F.3d at 854). A federal officer cannot be held liable for this claim if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b)(2). The officer must have "actual knowledge that the imprisonment of the plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710, 719 (1974).

Johnson alleges that the VA police arrested him "for no reason," that it was "set up," and because he "asked for an attorney to be present before answering questions." Compl. at 3-4. He further explains that "the officer did not witness a crime" but "knew the arrest was unlawful because you cannot arrest a person to force him talk without any attorney present." Opp'n at 8. Johnson fails to allege any facts that the arresting officers actually knew or should have known that his arrest was unlawful. Rather, Johnson's own papers illustrate that the VA had instituted a behavioral flag against him that required staff to contact the VA police "should patient be unable

11

1  to be redirected from engaging in disruptive behavior or pose a threat to safety." Compl. Ex. 1.
2  He also does not support his bare assertion that the VA police arrested him because he sought
3  legal counsel.[14] If Johnson wishes to bring a false arrest or imprisonment claim, his amended
4  complaint must allege factual allegations sufficient to support a plausible inference that the VA
5  police had actual knowledge that the arrest was false or lacked reasonable or probable cause to
6  arrest him.

### 2. Assault and Torture

"To prove assault under California law, Johnson must establish that: "(1) the officers threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to him that they were about to carry out the threat; (3) he did not consent to the conduct; (4) he was harmed; and (5) the officers' conduct was a substantial factor in causing the harm." *Johnson*, 2016 WL 4488180, at *9 (quoting *Tekle*, 511 F.3d at 855). Because the case involves law enforcement officers, Johnson must also establish "that the officers used 'unreasonable force.'" *Id.* (quoting *Avina v. United States*, 681 F.3d 1127 (9th Cir. 2012)). "[T]his standard requires that police officers executing an arrest or detention use only such force as is 'objectively reasonable' under the circumstances, regardless of their intent or motivation." *Id.* (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)).

Johnson alleges that he was "manhandled and forced down walk ways," "handcuffed," and "tortured . . . to make [him] talk." Compl. at 4-5. He claims that "the pain in my shoulder became unbearable." At the hearing, Johnson explained that the "assault" occurred when the officers

---

[14] Johnson also contends that the VA police could not reasonably believe that the arrest was lawful because it was "based on a case from 2015, 2016 in court on an issue from V.A. San Francisco." *See* Opp'n at 8. The court cannot consider new factual assertions that were not stated in the complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[I]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Johnson's assertion also contradicts the complaint's allegations. The complaint alleges that the VA police were called because of the behavioral flag on his account, no matter what he said, and they arrested him on January 14, 2020 because of his request to speak with an attorney. He does not allege that they arrested him because they were aware of his previous behavioral order or the previous lawsuit involving that order and the 2012 arrest. Johnson's theory thus requires a chain of inferences that is not supported by any factual allegations.

12

ordered him to approach them and that he felt threatened because they were armed. He also declared that the arresting officer put his hands on him and forced him down a long hallway, which caused him severe shoulder pain due to a previous injury to his rotator cuff he had sustained.

Johnson stated at the hearing that he was attempting to make a claim for battery. To assert a battery claim, Johnson must plead that "(1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff." *Johnson*, 2016 WL 4488180, at *9 (citing *Tekle*, 511 F.3d at 855; *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004)). As with his assault claim, Johnson must also show that the officers used "unreasonable force." *Id.* at *10; *see Avina* 681 F.3 at 1130-31. The complaint, however, currently does not plead battery. *See* Compl. at 7.[15] Nor does the complaint adequately allege the officers used unreasonable force when they arrested and handcuffed him for the purposes of an assault claim or a battery claim. *See Avina*, 681 F.3d at 1132 (ruling that "the use of handcuffs on the adult members of the Avina family was reasonable as it minimized the risk of harm to both officers and occupants" of a residence); *compare Johnson*, 2016 WL 4488180, at *10-11 (finding in context of battery claim that handcuffing Johnson for approximately three hours "was an unusually long time to keep Johnson's arms pinned painfully behind his back, given his condition, complaints, and these circumstances" and was "unreasonable," but that Johnson presented no evidence to support assault claim that "the officers threaten[ed] to touch or harm Johnson with unreasonable force"). Accordingly, Johnson does not state a plausible assault claim. The assault claim is dismissed with leave to amend. If Johnson wishes to add a battery claim, he must provide sufficient allegations to support a plausible inference that the force the officers used against him was unreasonable.

---

[15] Johnson's "torture" claim is not an actual legal claim for relief. The court liberally construes that claim as possibly raising a battery claim. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 91-92 (D.C. Cir. 2002), which Defendant raises and Johnson mentions in passing, refers to the definition of torture in the Foreign Sovereign Immunities Act and Torture Victim Protection Act, neither of which are at issue. *See* Mot. at 10; Opp'n at 8.

### 3. False/Malicious Prosecution

To establish a state law claim for malicious prosecution, "a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Zamos v. Stroud*, 32 Cal. 4th 958, 965 (2004). "California courts have consistently held that favorable termination in the context of a malicious prosecution action requires a plaintiff to show more than a mere dismissal of the underlying action; he or she must show facts establishing his or her innocence." *Fetters v. Cty. of Los Angeles*, 243 Cal. App. 4th 825, 843 (2016); *see also, e.g.*, *Maleti v. Wickers*, 82 Cal. App. 5th 181 (2022); *Sierra Club Foundation v. Graham*, 72 Cal. App. 4th 1135, 1149 (1999); *Pattiz v. Minye*, 61 Cal. App. 4th 822 (1998).[16]

Plaintiff simply alleges that "[t]hey took me to court, when it was pointed out I prevented a situation, not caused one, they dropped the charge." Compl. at 5. In his opposition, he refers to "the last page of Exhibit #3" of his complaint and avers in a conclusory way that it establishes "undeniable proof of the malicious prosecution."

Johnson clarified the basis of his malicious prosecution claim at the hearing. He explained that as a result of the January 14, 2020 incident, he was charged with a federal "disorderly conduct" offense and was ordered to appear for a hearing on September 2, 2022. Johnson explained that the assistant U.S. attorney who appeared at that hearing dropped the charge against

---

[16] Recently, the U.S. Supreme Court held that "a Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). The Court relied on "the American tort-law consensus as of 1871[, which] did not require a plaintiff in a malicious prosecution suit to show that his prosecution ended with an affirmative indication of innocence." *Id.* at 1340. The holding in *Thompson* applies to malicious prosecution claims under section 1983, not California law. Neither party raised *Thompson* or considered its possible effect, if any, on whether favorable termination under California law still requires a showing of innocence. The court also failed to find any California state or federal court case that addresses *Thompson* in the context of a state tort claim, not a section 1983 claim. Ultimately, the court does not reach this issue because as discussed below, Johnson fails to state a malicious prosecution claim irrespective of whether he can present facts showing his innocence or simply that the criminal proceeding ended without a conviction.

14

him but warned him that he would be charged again if he engages in disorderly conduct in the future.

Johnson's allegations about the "disorderly conduct" charge are not well-established in the complaint and are insufficient to adequately plead malicious prosecution. To plead a state law claim for malicious prosecution, Johnson must explain the nature of the charge and show that the Defendant lodged the charge against him without probable cause and with malice, and that it resulted in a termination in Johnson's favor. He will also need to explain how the charge was tied to the January 14, 2020 incident at the VA. Johnson must draft these allegations in the body of his complaint; he may not solely rely on attaching exhibits without any explanation of their relevance or connection to his claims.[17]

## IV.   CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to dismiss the complaint. The court dismisses Johnson's constitutional claim with prejudice because it is barred by the doctrines of sovereign immunity and administrative exhaustion and is otherwise not a cognizable due process challenge. The court also dismisses Johnson's tort claim under the FTCA for "tortured" and "prima facie case" with prejudice. The court finds that amendment to Johnson's remaining tort claims under the FTCA—i.e., false arrest or imprisonment, assault and possibly battery, and malicious prosecution—would not necessarily be futile and dismisses those claims with leave to amend.

The court grants Johnson leave to file his first amended complaint ("FAC") by October 12, 2022. Specifically, Johnson must do the following if he chooses to file a FAC:

1. Re-plead all his claims. Each complaint is a stand-alone document. An amended complaint cannot refer to or incorporate prior complaints. Therefore, the FAC must contain all claims brought by Johnson in this case.

---

[17] Johnson's final claim for "prima facie case," which inexplicably refers to Exhibit 3, does not state any cognizable legal claim for relief. *See* Compl. at 7. Johnson does not raise any argument to Defendant's motion to dismiss this claim, thereby forfeiting any challenge to it. Accordingly, the claim is dismissed.

15

2. Format the FAC in such a way that sufficiently places Defendant on notice of the allegations against it and allows it to adequately defend against the allegations. Johnson must:

- Clearly label the complaint "First Amended Complaint."
- Present a single statement of facts that encompasses all facts alleged, including facts in attached exhibits.
- Use separate numbered paragraphs, including in his statement of facts.
- Set forth the basis for an unequivocal waiver of sovereign immunity for his claims, such as the FTCA.
- Number each tort claim as a separate claim for relief instead of lumping them together under a single claim.

3. Plead facts and allegations that plausibly meets the standards for each tort claim as explained in this order. If Johnson seeks to allege a battery claim, he must separately allege one and provide allegations that support battery.

The court refers Johnson to the section "Representing Yourself" on the Court's website, located at http://cand.uscourts.gov/proselitigants, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: September 12, 2022



Donna M. Ryu
United States Magistrate Judge